IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARCUS HESSE, GUARDIAN OF JOSEF HESSE, et al., | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) ) |
| LONG AND FOSTER REAL ESTATE, INC., | ) ) ) |
| Defendant. | ) |

1:11cv506 (LMB/TCB)

## MEMORANDUM OPINION

Before the Court is defendant's Motion to Dismiss ("Motion") [Dkt. No. 5]. For the reasons stated in open court and expanded upon below, defendant's Motion will be granted.

### I. BACKGROUND

On July 23, 2005, Charles Ebbets ("Ebbets"), a real estate salesman working as an independent contractor with Long and Foster Real Estate, Inc. ("Long and Foster" or "defendant"), was involved in a motor vehicle accident in which his car struck a motorcycle carrying Josef and Doerte Hesse ("the Hesses" or "plaintiffs"), causing the Hesses devastating permanent injuries. Compl. ¶¶ 7-10. Through their respective guardians ad litem, the Hesses each brought a negligence action jointly against Ebbets and Long and Foster. Id. ¶¶ 13, 16. Plaintiffs alleged that Long and Foster was liable under the doctrine respondeat superior; however, after the Court concluded that

Ebbets was an independent contractor and that Long and Foster was not vicariously liable for Ebbets' negligence, summary judgment was granted in favor of Long and Foster. Id. ¶ 16.[1] Ebbets admitted liability, and judgment was entered against him in the amount of $15 million. Id. ¶ 15.

In this civil action, the Hesses seek recovery from Long and Foster alone under a breach of contract theory.[2] Specifically, plaintiffs argue that they should be considered third-party beneficiaries of two contracts between defendant and Ebbets under which Ebbets was expected to carry liability insurance on his car with minimum limits of $250,000 for each person and $500,000 for each occurrence. Id. ¶ 17. Plaintiffs further allege that as a result of Long and Foster's failure to enforce the insurance requirement, Ebbets carried only $100,000 in automobile liability insurance. Id. ¶¶ 20-21. They each seek $400,000 in damages, which they argue is the difference

---

[1] The Fourth Circuit affirmed the judgment on January 25, 2010 and denied the Hesses' petitions for panel rehearing and rehearing en banc. See Schwinn v. Long & Foster Real Estate, Inc., 362 F. App'x 357 (4th Cir. 2010). On October 4, 2010, plaintiffs' petition for a writ of certiorari was denied. See Schwinn v. Ebbets, 131 S. Ct. 124 (2010); Compl. ¶ 16.

[2] The Hesses originally initiated two separate civil actions against Long and Foster based on identical complaints. On August 5, 2011, the two cases were consolidated under the present caption. Although the one-count complaint often reads as if plaintiffs are alleging a tort, see Compl. ¶¶ 6, 10-14, 20, they insist that they are proceeding on a breach of contract theory.

2

between the $100,000 insurance carried by Ebbets and the $500,000 coverage they contend Ebbets should have carried.

In its Motion, Long and Foster raises numerous arguments to support its position that plaintiffs' complaint fails to state a claim. Specifically, defendant argues that there were no contracts to be breached; even if there were a contract that had been breached, the Hesses are not third-party beneficiaries of any such contract and therefore lack standing to sue; and even if the Hesses could sue, they cannot proceed against Long and Foster, the non-breaching party.[3]

## II. DISCUSSION

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the complaint's well-pleaded allegations as true and view them in a light most favorable to the plaintiff. See Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). That requirement applies to facts alone, not to legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). In addition, "if the well-pleaded

---

[3] Defendant also argues that plaintiffs' claims are untimely and cannot be raised due to res judicata. Furthermore, defendant points out that even if the plaintiffs prevailed, their total damages would have to be capped at the $500,000 per occurrence limit, minus the $100,000 already paid. In other words, plaintiffs would not be entitled to $400,000 per person. Because the Court finds that plaintiffs' underlying theory of the case is not cognizable under Virginia law, defendant's additional arguments need not be addressed.

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 1950 (citing Fed. R. Civ. P. 8). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Accordingly, a party must "nudge[] [his] claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion to dismiss. Id. at 570.

The elements of an action for breach of contract are (i) a legally enforceable obligation of a defendant to a plaintiff; (ii) the defendant's violation or breach of that obligation; and (iii) injury or damage to the plaintiff caused by the breach of the obligation. Filak v. George, 267 Va. 612, 619 (2004). The Hesses allege that a valid contract existed, that defendant had a duty to plaintiffs to enforce that contract, that defendant breached that duty when it did not ensure that Ebbets had acquired the minimum amount of liability insurance, and that plaintiffs were injured as a result of defendant's conduct.

At the outset, plaintiffs appear to point to two potential contracts in which Long and Foster requires Ebbets to maintain liability insurance. First, Long and Foster's employee policy manual ("employee manual") states that "[e]ach associate must

4

maintain proper automobile liability insurance on his/her vehicle used while conducting Long & Foster business. Coverage should be a minimum of $250,000 per person/$500,000 per occurrence for bodily injury and $50,000 property damage liability, or a combined single limit of $500,000." See Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem."), Ex. A at 9. The second putative contract, the Independent Contractor Agreement ("ICA"), reads in pertinent part:

> 9. Transportation. . . . Associate agrees to carry and maintain public liability insurance upon his/her automobile with minimum limits of $250,000 for each person and $500,000 for each occurrence and with a property damage of at least $50,000, (or a combined limit of $500,000) or the minimum limits required by the law where said automobile is registered or regularly driven, whichever is greater. Associate hereby agrees to indemnify and hold harmless Broker from any and all liability, including any and all reasonable attorney's fees, in connection with the operation by Associate of any automobile and any failure by Associate to carry and maintain the aforesaid automobile insurance.

Def.'s Reply Supp. Mot. to Dismiss, Ex. C ¶ 9.[4]

Although defendant does not concede that either document is a contract, several federal courts applying Virginia law have "held that terms and policies contained in an employee handbook can become part of a binding contract." E.g., Thompson v. Kings Entm't Co., 674 F. Supp. 1194, 1197 (E.D. Va. 1987)(citations

---

[4] A court may consider a document that is clearly referenced in, but not appended to, a complaint without converting a motion to dismiss into one for summary judgment. See Gasner v. Cnty. of Dinwiddle, 162 F.R.D. 280, 282 (E.D. Va. 1995).

5

omitted)(finding that the question of whether the policy manual at issue constituted a binding contract is a factual question for a jury). Plaintiffs correctly argue that a policy manual is not per se unenforceable as a contract. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7-9. For the purpose of resolving defendant's Motion, the Court will assume that a valid contract exists and is based on the employee manual, the ICA, or both.

Plaintiffs next argue that they were third party beneficiaries of these contracts and that Long and Foster therefore owed them a duty to enforce the requirement that its independent contractor carry the minimum amount of insurance. Virginia courts "have consistently held" that an individual purporting to be a third-party beneficiary must show that "the contracting parties clearly and definitely intended that the contract confer a benefit upon him." Collins v. First Union Nat'l Bank, 272 Va. 744, 751 (2006)(interpreting Va. Code Ann. § 55-22); accord Am. Bankers Ins. Co. of Fla. v. Maness, 101 F.3d 358, 365 (4th Cir. 1996). Plaintiffs, however, point to no specific evidence or case law to justify the conclusion that they were clearly intended third-party beneficiaries of either

the employee manual or the ICA.[5]

Nevertheless, even assuming the Hesses were clearly intended third-party beneficiaries of a contract between defendant and Ebbets, their claim fails because it rests on the novel theory that a third party to a contract can sue the non-breaching party for failure to enforce the contract. This is a basis for liability not recognized in this or any jurisdiction, and indeed, plaintiffs admit that they have no legal support for their position. Long and Foster argues it had no obligation to ensure compliance with the agreements' insurance provisions and that given its lack of control over Ebbets, who was an independent contractor, it cannot be held liable for Ebbets' failure to maintain greater liability insurance coverage.

---

[5] In fact, plaintiffs' sole support for their claim to be third-party beneficiaries is a 60-year-old Texas decision holding that a court may presume that a contract's liability insurance provision is intended to benefit not just the insured, who is protected by the provision, but also third parties, given that parties "must be presumed to have intended that [the logical consequences] flow from the performance of their contract." James Stewart & Co., Inc. v. Law, 149 Tex. 392, 398-99 (1950). Yet, James Stewart has never been followed in the Commonwealth or elsewhere, nor does it apply Virginia law, which distinguishes between incidental and intended beneficiaries. Moreover, the James Stewart defendant required its contracting party to periodically verify compliance by showing a certificate of liability insurance. See id. at 397. The defendant, therefore, took on an express obligation to verify and enforce, and the parties had clearly intended insurance procurement to be a central aspect of their agreement, distinguishing the case from the facts here. See id.

In a case involving similar facts, the Federal Circuit rejected the very theory that the Hesses proffer. See Sullivan v. United States, 625 F.3d 1378 (Fed. Cir. 2010). The plaintiffs in Sullivan were injured in a car accident with a United States Postal Service ("USPS") contractor who had failed to obtain the liability insurance required under its contract with the USPS. Id. at 1379. The Court held that the plaintiffs could not proceed against the USPS, explaining that "fail[ure] to enforce a contract provision that it was entitled to enforce . . . is not a breach of contract by the Government." Id. at 1379, 1381.

As the court explained in District of Columbia v. Campbell, 580 A.2d 1295 (1990), "in the vast majority of cases, the third-party beneficiary's action lies only against the promisor." Id. at 1302 (citing Restatement (Second) of Contracts § 304 (1981)).[6] The Campbell court reasoned that "[a]ssuming for the sake of argument that [the plaintiff], as a subcontractor, is an intended beneficiary of the [contract] provision . . . , he therefore could maintain his third-party claim only against the

---

[6] The court added that the "only category of cases . . . where the beneficiary may maintain an action against the promisee is where the beneficiary had a previous enforceable claim against the promisee and the promisor essentially assumed the promisee's obligation." Id. (citing Restatement (Second) of Contracts § 310(1) & comment a. (1981). Such is not the situation presented here.

8

breaching promisor . . . ." Id. at 1303.[7] "As a result," the defendant, being the promisee, "is not liable to [the plaintiff] under a third-party beneficiary theory for its failure to insist that" the promisor comply with the contract provision at issue. Id. As in Sullivan and Campbell, Long and Foster's decision not to enforce the insurance clauses in the employee manual and the ICA does not constitute a breach by Long and Foster, the promisee.

Under these putative contracts, Ebbets, the promisor, breached the clauses mandating a minimum insurance coverage amount. Because Long and Foster itself did not breach any obligation, plaintiffs' case ultimately rests on a theory of negligent supervision. Yet, negligent supervision is not a cognizable cause of action under Virginia law. See Chesapeake & Potomac Tel. Co. v. Dowdy, 235 Va. 55, 61 (1988)("There can be no actionable negligence unless there is a legal duty, a violation of the duty, and a consequent injury." Absent extraordinary circumstances, Virginia imposes "no duty of

---

[7] The contract in Campbell existed between the defendant District of Columbia and a prime contractor, with whom the plaintiff, a subcontractor, was in privity. The contract provision at issue pertained to a D.C. statute requiring the District of Columbia to obtain a payment bond from any contractor awarded a public construction project exceeding $25,000. Because the statute made the payment bond mandatory, "that statute is as much a part of the contract as if the [statute] were expressly incorporated into the terms of the prime contract." 580 A.2d at 1302 (citations omitted).

9

reasonable care . . . upon an employer in the supervision of its employees."); Morgan v. Wal-Mart Stores East, LP, No. 3:10CV669-HEH, 2010 WL 4394096, at *4 (E.D. Va. Nov. 1, 2010)(collecting Fourth Circuit cases holding that negligent supervision is not recognized in Virginia). As such, this civil action cannot be maintained against this defendant as a matter of law.

### III.  CONCLUSION

For the above-stated reasons, defendant's Motion will be granted, and this civil action will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 23rd day of April, 2012.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge